JOURNAL ENTRY AND OPINION
In these consolidated matters, Arlene Walker appeals from a judgment of the juvenile court which terminated her parental rights and granted permanent custody of her sons, Kamal Walker, Kevin Robinson, Jr., and Mario Walker, to Cuyahoga County Children and Family Services (CCDCFS). Kevin Robinson, the father of Kamal and Kevin, separately appeals from the same judgment. Walker assigns the following as error for review.
 THE TRIAL COURT ERRED IN GRANTING CCDCFS' MOTION FOR PERMANENT CUSTODY OF KAMAL WALKER, KEVIN ROBINSON, JR. AND MARIO WALKER AS SAID FINDINGS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Robinson assigns the following as error for our review.
 THE TRIAL COURT ERRED BY GRANTING CCDCFS PERMANENT CUSTODY OF THE INVOLVED MINOR CHILDREN WHERE THE NATURAL FATHER WAS INCARCERATED DURING ALL RELEVANT TIMES AND THAT CCDCFS HAD ACTUAL KNOWLEDGE OR IN THE EXERCISE OF REASONABLE DILIGENCE SHOULD HAVE KNOWN OF SAID NATURAL FATHER'S INCARCERATION FOR THE PURPOSES OF NOTIFICATION OF THE PERMANENT CUSTODY HEARING AND SUCH NOTICE WAS DONE BY PUBLICATION AND SAID NATURAL FATHER NEVER WAS AFFORDED APPOINTED COUNSEL AT ANY STAGE OF THE TRIAL COURT PROCEEDINGS.
Having reviewed the record and the legal arguments of the parties, we affirm the judgment of the juvenile court.
The record before us reveals Arlene Walker has seven children: Robert, Michael, Mario, Adam, Ava, Kamal and Kevin. Ava was removed at birth due to positive toxicology for cocaine and committed to the legal custody of relatives in 1995. Robert and Michael have been in foster care since 1993. Adam has been adopted.
On July 8, 1999, CCDCFS filed a complaint alleging Mario Walker to be dependent and seeking permanent custody. The complaint stated Mario's mother, Arlene, is currently incarcerated for forgery. Upon her incarceration she left Mario in the care of her boyfriend who then left him with another individual and that individual has requested his immediate removal. The complaint further states Mario had been previously committed to the care of CCDCFS from 1988 to August of 1998, his father, Robert Payne, aka, Robert Kelly, has failed to establish paternity, support or visit him, and he has only a minimal relationship with his mother.
On July 16, 1999, CCDCFS filed a complaint alleging Kamal Walker and Kevin Robinson, Jr. to be neglected and seeking permanent custody. As grounds for the complaint, CCDCFS stated both children have been in the temporary custody of CCDCFS in 1988, 1990 and 1993 and eventually were placed in long term foster care. Further, although the mother has completed various aspects of the case plan over the years, she has not been able to become financially secure and has not found adequate housing. The father, Kevin Robinson, has failed to establish paternity and his repeated incarceration prevents him from providing adequate care and support for his children.
The court conducted an adjudicatory hearing on March 16, 2000. All parties were present except Robert Payne and Kevin Robinson. The court heard testimony from CCDCFS social worker Angel Thompkins, Womens Re-Entry Resources Network director Emily Edwards, Diversity Institute deputy director Craig Taliaferro, paternal grandmother Gwendolyn Robinson and Arlene Walker.
Based on the evidence presented at trial, the court adjudicated Mario dependent and Kevin and Kamal neglected. The court then proceeded immediately to disposition and granted permanent custody of all three children to CCDCFS.
In her sole assignment of error, Walker asserts the court's grant of permanent custody had been against the manifest weight of the evidence.
When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in a criminal context. In re: Ozmun (April 14, 1999) Summit County App. No. 18983, unreported.
In State v. Martin (1983), 20 Ohio App.3d 172, the court stated:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
Additionally, the court in State v. Thompkins (1997), 78 Ohio St.3d 380, stated:
 Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicated clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them.
Therefore, our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Thus, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279.
Further, the award of permanent custody of a child is governed by R.C. 2151.414(B) which provides in pertinent part:
 (B) The court may grant permanent custody of a child to a movant if the court determines * * * by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that * * *:
 (1) * * * the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents; * * *.
In determining the best interests of the child, the court shall consider the interaction of the child with his parents, siblings and foster parents, the wishes of the child, the custodial history, and the need for a legally secure permanent placement. R.C. 2151.414(D).
At the permanent custody hearing, the court heard evidence from social worker Angela Thompkins, who testified the family first came to the agency's attention in 1987 when Walker called the hot line seeking help with the children. In 1988, Mario was removed from the home, but was reunified approximately four months later. In November 1988, Robert, Michael, Mario and Adam were removed due to issues of drug abuse in the home. Robert and Michael were reunified in 1992; however, in 1993, they, along with Ava, Kevin and Kamal were removed once more. Robert and Michael have been in foster care since that time; Ava was committed to the legal custody of relatives in 1995; Adam has been adopted. Kevin and Kamal have remained in the custody of CCDCFS since 1993. Mario was briefly reunified with Walker in August 1998 but removed in July 1999 due to Walker's incarceration.
The agency established various case plans over the course of many years designed to reunite Walker with Kevin, Kamal and Mario which required that she attend parenting classes, maintain stable housing and complete a drug treatment course. The parties agree that Walker completed a parenting class in 1998, an anger management program, welfare reform training and domestic violence training.
Walker introduced evidence from Emily Edwards, director of Women's Re-Entry Resource Network, who testified she first met Walker in 1996 when she voluntarily entered the program seeking support services. Edwards further testified Walker attended individual counseling consistently, became employed by Community Re-Entry and had been selected to be a peer mentor.
Craig Taliaferro, deputy director of Diversity Institute, testified Walker sought his program when she was transferred from Marysville and that she participated in anger management, child development, stress and coping skills, time out, discipline, domestic violence and welfare reform workshops. He also stated she attends AA, NA and Big Book meetings weekly and that she tested negative in three random urine screens.
Gwendolyn Robinson, paternal grandmother of Kamal and Kevin, testified and stated she would be willing to provide a home for the children. She also stated her son, Kevin, is currently incarcerated but that he did not want his children to be adopted. On cross-examination, she admitted that her son has a significant drug problem and that he would live with her after his release.
Finally, Arlene Walker testified she is currently incarcerated at Northeast Pre-Release and had been sentenced to twenty-two months. Her expected release date is April 12, 2001. She stated she has completed counseling, drug treatment and parenting classes and that upon her release, she plans to go back to work for Community Re-Entry earning $8.00 per hour with medical benefits for the children. She testified that she has been clean and sober for five years and she wants custody of the children. On cross-examination, she admitted writing a letter in August 1999 agreeing to allow Kevin and Kamal to be adopted.
During the dispositional hearing, Thompkins testified Kevin and Kamal have been placed in a foster home together since 1993, they are considered to be a part of that family, the foster parents are willing to adopt them and permanent custody is in their best interest. Regarding Mario, she testified the foster mother is not willing to adopt but that permanent custody would also be in his best interest.
In granting permanent custody of the three children to CCDCFS, the court found:
 1. * * * [t]he parent has failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the children's home.
 2. The parent has demonstrated a lack of commitment toward the children by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.
 3. The parent has had parental rights terminated with respect to sibling of the child.
 4. The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.
In accordance with R.C. 2151.414(E), the court correctly found the children cannot be placed with either parent within a reasonable time or that they should not be placed with either parent. Therefore, after reviewing the entire record, weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, we have concluded the trial court's grant of permanent custody had not been against the manifest weight of the evidence. Accordingly, this assignment of error is over-ruled.
In his assignment of error, Robinson argues he had not been properly served and therefore, the juvenile court's determination must be reversed.
The docket in this case, however, indicates the contrary. CCDCFS filed a complaint regarding Kevin Walker and Kamal Robinson, Jr. on July 16, 1999 and along with it, submitted an affidavit by social worker Kimberly Peck. The affidavit stated that the agency attempted to serve Robinson in prison, adult parole authority had been contacted, he had been released on June 12, 1999, and left no forwarding address. On August 9, 1999, and September 8, 1999, service by publication had been accomplished because the agency did not have an address for Robinson. On December 28, 1999, a summons was sent to his mother's address and on February 18, 2000, the court sent notice of the hearing to the same address. After all of these attempts, Robinson still did not enter an appearance at any stage of these proceedings. The only time he made an effort to become involved was the day of the adjudicatory hearing when, through his mother, he informed the court he was presently incarcerated and did not want his sons adopted.
Further, we note that at no time did Robinson request an attorney. Therefore, we find this assignment of error to be without merit. Accordingly, the judgment of the juvenile court is affirmed.
Judgment affirmed.
It is ordered that appellee recover of appellants its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Juvenile Court Division of Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 _________________________ PATRICIA ANN BLACKMON, J.